

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 15, 2023

**BY ECF**

The Honorable Jennifer H. Rearden
United States District Judge
500 Pearl Street
Southern District of New York
New York, New York 10007

Re:   *United States v. Charles McGonigal and Sergey Shestakov*, **23 Cr. 16 (JHR)**

Dear Judge Rearden:

The Government writes to respectfully request that the Court enter a protective order pursuant to Federal Rule of Criminal Procedure 16(d). A proposed order is attached as Exhibit A. This application is on consent as to defendant Charles McGonigal, but defendant Sergey Shestakov objects to two of the provisions of the Government's proposed protective order.[1] As explained below, Shestakov's objections are meritless, and good cause supports the entry of the Government's proposed order.

## I.   Background

On January 12, 2023, a grand jury in this District returned Indictment 23 Cr. 16 (JHR), which charges McGonigal and Shestakov in five counts. Count One charges both defendants with conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"), in violation of 50 U.S.C. § 1705, Executive Orders 13660, 13661, and 13662, and 31 C.F.R. § 589.201; Count Two charges both defendants with a substantive violation of IEEPA, in violation of the same statute, Executive Orders, and C.F.R. provision, as well as 18 U.S.C. § 2; Count Three charges both defendants with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); Count Four charges both defendants with money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2; and Count Five charges Shestakov alone with making false statements in violation of 18 U.S.C. § 1001.

---

[1] McGonigal consented to the proposed order, and agreed to be bound by its terms informally until the Court enters a protective order. Based on that agreement, and on the same day it was reached, the Government began producing discovery to McGonigal. The Government offered to begin producing discovery to Shestakov as well, upon his agreement to be bound by the proposed protective order pending the resolution of this dispute, but Shestakov has refused that offer.

The defendants were each arrested on January 21, 2023, and were presented before Magistrate Judge Sarah L. Cave on January 23, 2023. The next day, the Government proposed a standard protective order, based on those routinely used in this District, to counsel for both defendants. Over the ensuing days, the Government repeatedly discussed the proposed protective order with McGonigal's counsel, and agreed to make certain modifications based on those discussions. The Government and McGonigal's counsel reached agreement on a protective order with the terms contained in Exhibit A, and on February 6, 2023, McGonigal's counsel returned a signed copy of the order. That same day, the Government began producing discovery to McGonigal. During most of that time period, however, the Government was unable to negotiate with Shestakov's counsel, as we were told he was retaining new counsel.

On February 6, 2023, Shestakov's current counsel filed a notice of appearance. That evening, the Government sent the text of the proposed protective order to counsel for her consideration. But the parties were not able to agree to terms before February 9, 2023, when the parties appeared before this Court for an initial status conference. At that conference, the Government explained that, subject to resolving disputes with Shestakov's counsel relating to the protective order, the Government expected to produce the bulk of discovery that was in its possession at the time within 30 days.

Since that conference, the Government and Shestakov have been unable to resolve certain limited disputes over the terms of the protective order. Shestakov objects to two aspects of the proposed protective order. First, he objects to the second sentence of paragraph 3,[2] on the basis that the Government should be required to agree to reciprocal obligations not to disclose the discovery materials. Second, he objects to the fact that paragraph 7[3] is not reciprocal, claiming that the Government should be required to provide the protective order to, and maintain records of, persons to whom the Government provides the discovery materials in this case.

## II.    Applicable Law

Under Federal Rule of Criminal Procedure 16(d), "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d). "[T]he Supreme Court has held that 'the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *United States v. Smith*, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013) (quoting *Alderman v. United States*, 394 U.S. 165, 185 (1969)).

---

[2] That sentence provides: "The defense shall not post any Disclosure Material on any Internet site or network site, including any social media site such as Facebook or Twitter, to which persons other than the parties hereto have access, and shall not disclose any Disclosure Material to the media or the public other than when such material becomes part of the public record in connection with court filings and court proceedings or as otherwise set forth herein." Ex. A ¶ 3.

[3] The paragraph states: "The defense shall provide a copy of this Order to prospective witnesses and persons retained by counsel to whom the defense has disclosed Disclosure Material. All such persons shall be subject to the terms of this Order. Defense counsel shall maintain a record of what information has been disclosed to which such persons." Ex. A ¶ 7.

In evaluating good cause, the Court can consider "the safety of witnesses and others," the "particular danger [of] perjury or witness intimidation," and "the protection of business enterprises from economic reprisals." *Alderman*, 394 U.S. at 185. And courts routinely find good cause for protective orders in this District to protect the identities of witnesses, *see, e.g.*, *United States v. Urena*, 989 F. Supp. 2d 253, 262 (S.D.N.Y. 2013), and to address "countervailing law enforcement concerns," *United States v. Kerik*, No. 07 Cr. 1027 (LAP), 2014 WL 12710346, at *2 (S.D.N.Y. July 23, 2014). Protective orders are frequently necessary in cases (like this one) in which the Government intends to "provide a vast amount and array of discovery materials, including audio recordings, transcripts, computer files, business records, telephone records, and other materials." *Smith*, 985 F. Supp. 2d at 546.

When the Government seeks a protective order, it bears the burden of establishing good cause, which remains the standard even when the parties consent to entry of a protective order. *See, e.g.*, *United States v. Jackson*, No. 21 Cr. 537 (LTS), 2022 WL 582700, at *2 (S.D.N.Y. Feb. 25, 2022).

## III.   Discussion

### A.   Good Cause Supports Entry of the Protective Order

There is good cause for a protective order relating to the discovery materials the Government anticipates producing in this case.[4] Those materials include, among other things, the contents of multiple electronic devices which contain communications among many people other than the defendants; law enforcement records, including records discussing persons other than the defendants themselves; recordings of interviews by law enforcement and related records; financial records, including those of third parties; travel records; business records from internet and cell phone providers and social media companies; and business records produced by and relating to various other non-parties and witnesses. A protective order governing the use and publication of those records is necessary because their broad dissemination would pose at least three specific risks.

*First*, the materials include, among other things, information pertaining to the imposition of sanctions on Russian oligarchs, information from various sources about potential Russian influence in the United States, and documents relating to law enforcement's surveillance efforts. None of the materials that will be subject to this protective order are classified—the Government has determined that they can appropriately be produced to the defendants in order to comply with the Government's discovery obligations—but there would still be law enforcement consequences to their public disclosure.

*Second*, the protective order is necessary to protect the privacy interests of third parties whose personal information is contained in the discovery materials. Those materials include, for instance, phone records containing the names and phone numbers of numerous third parties; financial records containing the names, dates of birth, contact information, and financial information of numerous third parties; and private communications of third parties. Absent a

---

[4] In cases involving voluminous materials, courts frequently issue "[b]lanket or umbrella protective orders," under which "everything is tentatively protected until otherwise ordered." *Smith*, 985 F. Supp. 2d at 545 (quoting *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012)).

protective order with the provisions to which Shestakov objects, those materials could be disseminated online, or to the press, or to countless others, revealing sensitive private information.

*Third*, and relatedly, the discovery in this case includes documents that could lead to the identification of a number of potential witnesses in the case. Those documents include not only the records described above, but also other information provided by potential witnesses to law enforcement either voluntarily or in response to subpoenas. The public revelation of the identities of witnesses in this case could endanger those individuals' privacy and economic well-being, especially given the significant media attention this case has garnered thus far. The Government has a strong interest in protecting the identities of, and the safety of, civilian witnesses who have provided information in this case and who may testify at trial.

In sum, good cause exists to protect the information the Government has disclosed to McGonigal and wishes to disclose to Shestakov. The Government's proposed order is appropriate under the circumstances, and the Court should enter it.

### B.     The Court Should Reject Shestakov's Objections

Shestakov appears to concede the necessity for *some* protective order, but has made two limited objections, both of which focus on provisions that apply only to the defense, but that Shestakov asserts should reciprocally apply to the Government. The Court should reject Shestakov's objections.

As an initial matter, the proposed protective order is non-reciprocal because the anticipated discovery is non-reciprocal.[5] The Government has lawfully obtained various information during its investigation, and wishes to produce some of it to the defendants and their counsel in order to comply with its discovery obligations. To protect the information the Government will be producing, the Government is asking the Court to place certain common, limited restrictions on the defendants' use of the information. The protective order's scope is narrow—it is limited only to information to be produced *by the Government*. *See* Ex. A ¶ 1. Accordingly, the protective order appropriately governs only the *defense's* uses of the information. If and when the defendants comply with their reciprocal discovery obligations, *see* Fed. R. Crim. P. 16(b)(1), they can seek from the Government or the Court a protective order relating to the Government's handling of those materials. (And of course, by the same token, to the extent the defendants currently possess information that may become subject to disclosure under Rule 16(b)(1), the defendants can themselves use that material in any lawful way they want.)

More to the point, to the extent Shestakov has explained his objections to the challenged terms in the proposed order, those objections are not valid. In objecting to paragraph 3, for instance, counsel has told us that she will not agree to unilateral restrictions because she believes there is a risk that the Government will leak discovery material publicly. Courts have squarely rejected that argument. A defendant has no right to use discovery materials to influence public opinion about, or media coverage of, his case; as a result, the desire to publicly respond to perceived wrongs by the Government is no basis to oppose or modify a protective order. *See, e.g.*, *Smith*, 985 F. Supp.

---

[5] Applicable legal rules are likewise not reciprocal. For instance, the Government is bound by the grand jury secrecy obligations in Federal Rule of Criminal Procedure 6(e)(2), while the defense is not.

2d at 540; *United States v. Lindh*, 198 F. Supp. 2d 739, 743 (E.D. Va. 2002). If Shestakov takes issue with public statements made by the Government, the remedy is supplied by Local Criminal Rule 23.1—which binds the Government and the defense alike—and there is no need to modify the proposed protective order. *See* L. Crim. R. 23.1(h) (discussing availability of motions relating to extrajudicial statements by parties). As for paragraph 7, Shestakov's counsel has claimed that the integrity of the proceedings requires that the Government, like the defense, maintain records about the persons to whom discovery materials are provided, and provide copies of the protective order to all such persons. But the Government is aware of no legal authority—nor any good cause under Rule 16(d)—supporting that request. And because the Government has long possessed much of this information, and appropriately used it for a variety of lawful purposes, such a log would be impractical at this stage.

As the Court might expect, given the lack of support for these objections, courts in this District routinely find good cause for, and enter, protective orders containing both of the challenged, unilateral restrictions. *See, e.g.*, *United States v. Zelony-Mindell*, No. 23 Cr. 11 (PAE), Dkt. 8 ¶¶ 1 & 5 (Jan. 19, 2023); *United States v. Centeno*, No. 22 Cr. 542 (DLC), Dkt. 12 ¶¶ 5 & 11[6] (Nov. 3, 2022); *United States v. Lin*, No. 21 Cr. 665 (KPF), Dkt. 13 ¶¶ 5 & 15 (Nov. 10, 2021). Indeed, this Court found good cause for and issued a protective order that prohibited the defense from disclosing discovery materials to the media or posting them on the internet just last month. *See United States v. Handler*, 23 Cr. 4 (JHR), Dkt. 47 ¶ 3 (Jan. 30, 2023).

\*\*\*

Good cause supports the Government's proposed protective order, including the two provisions to which Shestakov's counsel objects. The Government therefore respectfully requests that the Court reject the objections and enter the attached proposed protective order.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/_____
Rebecca T. Dell
Hagan Scotten
Derek Wikstrom
Assistant United States Attorneys
(212) 637-2198 / 2410 / 1085

Cc:    Defense Counsel (by ECF)

---

[6] Due to an apparent typographical error this order contains two paragraphs numbered "11"; the relevant paragraph 11 appears on page 5 of the order.