# BRACEWELL

March 1, 2023

**VIA ECF**

Honorable Jennifer H. Rearden
United States District Judge
500 Pearl Street
Sothern District of New York
New York, New York 10007

Re:     *United States v. Charles McGonigal*, 23 Cr. 16 (JHR)

Dear Judge Rearden,

In response to the government's submission of February 8, 2023 and in anticipation of the parties' *ex parte* conferences pursuant to Section 2 of the Classified Information Procedures Act ("CIPA"), Mr. McGonigal submits this letter to assist the Court in navigating the classified information issues that are implicated by the government's bringing of this case. Set forth below is a brief overview of CIPA, the applicable caselaw, and the Department of Justice policies that govern the prosecutors' responsibility to search for and produce information in possession of other government agencies that may be relevant and helpful to the preparation of the defense. We hope this overview is helpful to frame the issues we expect to present to the Court at the upcoming conference.

### I.     The Classified Information Procedures Act

CIPA, codified at 18 U.S.C. App. III, is a set of procedures by which federal district courts rule on pretrial matters concerning the discovery, admissibility and use of classified information in criminal cases. *See United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996). CIPA's fundamental purpose is to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the government's right to protect classified material in the national interest." *Id.* As a procedural statute, CIPA neither adds nor detracts from the substantive rights of the defendant or the discovery obligations of the government. *See* U.S. Dep't of Just., Just. Manual § 2054 (2020) available at https://www.justice.gov/archives/jm/criminal-resource-manual-2054-synopsis-classified-information-procedures-act-cipa; *see also United States v. El-Hanafi*, No. S5 10 CR 162 KMW, 2012 WL 603649, at *2 (S.D.N.Y. Feb. 24, 2012) ("CIPA does not expand or restrict established principles of discovery."). To the contrary, the statute provides mechanisms

**Mr. Seth D. DuCharme**         T:+1.212.508.6165         F: +1.800.404.3970
**Ms. Meagan C. Maloney**      31 W. 52nd Street, Suite 1900, New York, New York 10019-6118
                                                seth.ducharme@bracewell.com         bracewell.com

AUSTIN   CONNECTICUT   DALLAS   DUBAI   HOUSTON   LONDON   NEW YORK   SAN ANTONIO   SEATTLE   WASHINGTON, DC

# BRACEWELL

March 1, 2023
Page 2

by which the government is able to disclose classified information to the defendant, or cleared defense counsel in the first instance, pursuant to its fundamental discovery obligations.

Under Section 1 of CIPA, "classified information" is defined as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. § App. III § 1(a). "National security" refers to the "national defense and foreign relations of the United States." *Id.* § 1(b). As a member of the United States intelligence community, for example, the Federal Bureau of Investigation has the discretion and authority to classify communications, reports and the fruits of surveillance, among other things, if it makes a determination that the disclosure of such information could cause harm to the national security of the United States. Similarly, the FBI has the authority to declassify information when the interests in disclosing that information, such as the constitutional obligations underlying discovery, outweigh the national security interests in concealing that information. *See* Exec. Order No. 13526, 75 Fed. Reg. 707, (2009). Here, the government has already declassified certain limited materials it determined were discoverable under Rule 16 of the Federal Rules of Criminal Procedure.

Section 2 of CIPA provides that "at any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. § App. III § 2. Upon such motion, "the court shall promptly hold a pretrial conference" to establish (1) the timing of requests for discovery, (2) the provision of pretrial notice to the government of the defendant's intention to disclose classified information, pursuant to Section 5 of CIPA, and (3) the initiation of the procedure concerning use, relevance, and admissibility of classified information, pursuant to Section 6 of CIPA. *Id.* To encourage open communication at the Section 2 conference, any statements made by the defendant or his attorney at the conference may not be used against the defendant unless the statement is in writing and signed by the defendant. *Id.* Here, a CIPA Section 2 conference makes perfect sense not only because the government has alluded to its reliance on classified information in the indictment, *see, e.g.,* paragraphs 1–2, but also because Mr. McGonigal himself held high-level security clearances and his own knowledge of classified information is material to his state of mind during the relevant time frame.

To protect the sensitivities involved with the handling of classified information, Section 3 provides for the issuance of protective orders governing the disclosure of classified information to the defendant. *See id.* § 3. In contrast to the Court's discretionary authority to issue protective orders under Rule 16(d)(1), Section 3 "makes it clear that protective orders are to be issued, if requested, whenever the government discloses classified information to a defendant in connection with a prosecution." *Pappas*, 94 F.3d at 801. The defense anticipates the disclosure of classified

**BRACEWELL**

March 1, 2023
Page 3

information by the government and, with the assistance of the government, has secured access to a facility that is appropriate for the storage of such material.

Section 4, which is in many ways the heart of CIPA, governs the methods of disclosure of classified information by the government to the defendant, pursuant to its constitutional and statutory obligations. *See* 18 U.S.C. § App. III § 4. Section 4 is implicated when the head of the department with control over the matter, and after personal consideration of the matter, invokes the states-secrets privilege to withhold classified information from the defendant in the interests of national security. *Doe v. C.I.A.*, No. 05 CIV. 7939 LTSFM, 2007 WL 30099, at *1 (S.D.N.Y. Jan. 4, 2007); *see also United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008). The states-secrets privilege however is not absolute: it "must—under some circumstances—give way . . . to a criminal defendant's right to present a meaningful defense." *United States v. Abu-Jihaad*, 630 F.3d 102, 141 (2d Cir. 2010). (internal quotations omitted).

Under Section 4, upon a "sufficient showing" by the government, the Court may authorize the government to "delete specified items of classified information from documents to be made available to the defendant . . . , to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove." 18 U.S.C. § App. III § 4. The government makes a sufficient showing that such alternatives are warranted through an *ex parte* submission to the Court. *See id; see also United States v. Muhanad Mahmoud Al-Farekh*, 956 F.3d 99, 109 (2d Cir. 2020). Of critical importance to the fairness of the process, the Court may review, *ex parte* and *in camera*, the classified information at issue to determine whether and in what form the information must be disclosed to the defendant, and whether the government has truly satisfied its discovery obligations. *See, e.g., United States v. Aref*, No. 04 CR 402, 2006 WL 1877142, at *1 (N.D.N.Y. July 6, 2006). To assist the Court in this analysis, the defense will provide the Court with its initial view of the scope of material that will be relevant and helpful in the preparation of the defense at the upcoming conference and will supplement that information as appropriate.

Sections 5 and 6 of CIPA apply when a criminal defendant who already possesses classified information seeks to disclose such information during trial or pretrial proceedings. For the reasons set forth above, this is a distinct possibility in the matter at hand. Section 5 requires a defendant who reasonably intends to disclose or cause the disclosure of classified information to provide timely pretrial notice to the Court and the government. *See* 18 U.S.C. § App. III § 5. Notification must take place "within the time specified by the court, or where no time is specified, within thirty days prior to trial." *Id.* The defendant's notice may be brief but must state "*with particularity*, which items of classified information entrusted to him he reasonably expects will be revealed by his defense in this particular case." *United States v. Schulte*, No. 17-CR-548 (JMF), 2022 WL 1639282, at *1 (S.D.N.Y. May 24, 2022) (emphasis in original).

# BRACEWELL

March 1, 2023
Page 4

   Following receipt of the Section 5 notice, Section 6 authorizes the government to "request the court to conduct a hearing to make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18 U.S.C. § App. III § 6(a).  The government must give the defendant timely notice of its request for a Section 6(a) hearing and identify in its notice the specific classified information it seeks to preclude from use at trial.  *Id.* § 6(b)(1).  Section 6 "does not alter the existing standards for determining relevance or admissibility," but rather alters the timing of admissibility rulings and requires them to be made before trial.  *Schulte*, 2022 WL 1639282, at *2; *see id.* § 6(a) ("[T]he court shall rule *prior* to the commencement of the relevant proceeding.") (emphasis added).

   After hearing arguments of counsel at the Section 6(a) hearing, the Court must state in writing the basis for its admissibility determinations.  18 U.S.C. § App. III § 6(a).  If the Court determines that the classified information at issue may not be disclosed or elicited during the proceeding, the record of the hearing must be sealed and preserved for use in the event of an appeal.  *Id.* § 6(d).  If the Court finds the classified evidence must be disclosed or elicited, the government may move for, and the court may authorize: (1) the substitution of a statement admitting relevant facts that the specific classified information would tend to prove or (2) the substitution of a summary of the classified information.  *Id.* § 6(c)(1).

   If the Court denies the government's motion for substitution under Section 6(c), the Attorney General may file an affidavit effectively prohibiting use of the classified information.  *See id.* § 6(e)(1).  Upon receipt of the affidavit, the Court may impose a sanction against the government to compensate for defendant's inability to disclose the information in his defense.  *Id.*  Sanctions may include the dismissal of specific counts, a finding against the government on an issue to which the classified information relates, striking or precluding testimony of a witness, or dismissing the indictment in its entirety.  *Id.* § 6(e)(2).

   If needed, Section 7 provides for an expedited interlocutory appeal by the government of any court order "authorizing the disclosure of classified information, imposing sanctions for nondisclosure of classified information, or refusing a protective order sought by the United States to prevent the disclosure of classified information."  *Id.* § 7(a).  It is the Department's policy, as a matter of fairness, that the government give timely notice to the defendant of an appeal under Section 7.  *See* U.S. Dep't of Just., Just. Manual § 2054 (2020) available at https://www.justice.gov/archives/jm/criminal-resource-manual-2054-synopsis-classified-information-procedures-act-cipa.

   Section 8 prescribes additional procedures governing the introduction of classified information into evidence.  18 U.S.C. § App. III § 8.  For example, Section 8(a) allows the parties to enter classified information into evidence at trial without change in its classification status and leaves the decision to declassify such information to the classifying agency.  *Id.* § 8(a).  Section 8(b) authorizes the court to admit only part of a document containing classified information into

**BRACEWELL**

March 1, 2023
Page 5

evidence when fairness does not require the whole document to be considered. *Id.* § 8(b). Finally, Section 8(c) provides specific procedures to address lines of questioning that elicit classified information from a testifying witness. *Id.* § 8(b). In this scenario, the government must object to the line of questioning, and the Court must determine whether the witness' answer will compromise classified information. *Id.*

In sum, CIPA provides procedures by which both the government and the defendant may make use of classified information in a criminal case. It expressly contemplates the government's obligation to disclose classified information to the defendant and the defendant's subsequent use of classified information at trial.

## II.   The Government's Discovery Obligations

As this Court is well-aware, Mr. McGonigal is entitled to four basic categories of discoverable material from the government: Rule 16 material, exculpatory material under *Brady v. Maryland* and its progeny and, of equal importance, impeachment material under *Giglio v. United States*. In addition, it is fundamental to Mr. McGonigal's right to cross-examine witnesses that he be given prior statements of witnesses that are relevant to the subject matter of his or her testimony, pursuant to the Jencks Act, 18 U.S.C. § 3500. As expressly provided by CIPA, the fact that discoverable information may be classified does not relieve the government of its obligation to disclose the material to the defendant. *See United States v. Poindexter*, 725 F. Supp. 13, 32 (D.D.C. 1989) ("[T]he protection of the rights of the defendant is paramount under the statutory scheme."). Moreover, a wealth of caselaw *and the Department's own policy* acknowledge that the government's discovery obligations often implicate classified information in possession of the broader United States Intelligence Community ("IC") and directs prosecutors to conduct a prudential search for such information that is relevant and helpful to the defense. *See* U.S. Dep't of Just., Just. Manual § 2052 (2020), available at https://www.justice.gov/archives/jm/criminal-resource-manual-2052-contacts-intelligence-community-regarding-criminal-investigations.

As an initial matter, it is well-settled that the government has a duty to search at least the files within the prosecutor's own office for evidence that is material and favorable to the defense. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. U.S.*, 405 U.S. 150, 154 (1972). In addition, the government's duty to search for *Brady* material extends to other agencies acting on the government's behalf in a case even if the prosecutor has no personal knowledge of the existence of such material. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992). In such cases, "[k]nowledge of material information may be imputed to the prosecutor when that information is possessed by others on the prosecution team." *United States v. Velissaris*, No. 22CR105 (DLC), 2022 WL 2392360, at *1 (S.D.N.Y. July 3, 2022) (internal quotations omitted).

Here, the government's indictment expressly refers to matters of national security that reasonably implicate the equities of multiple IC agencies. The government's obligation thus

# BRACEWELL

March 1, 2023
Page 6

extends to a search of IC files for discoverable material where, as here, the IC may be presumed to have been involved in the investigation of a particular matter:

> When an IC component has actively participated in a criminal investigation or prosecution -- that is, has served in a capacity that exceeds the role of providing mere tips or leads based on information generated independently of the criminal case -- it likely has aligned itself with the prosecution and its files are subject to the same search as would those of an investigative law enforcement agency assigned to the case.

U.S. Dep't of Just., Just. Manual § 2052(B)(1) (2020), available at https://www.justice.gov/archives/jm/criminal-resource-manual-2052-contacts-intelligence-community-regarding-criminal-investigations. Even where the IC had no active involvement in the criminal investigation, the government's search "must extend to sources that are readily available to the government and that, because of the known facts and nature of the case, should be searched as a function of fairness to the defendant." *Id.* § 2052(B)(2). Here, it strains credulity to believe that no member of the IC is in possession of information that falls within the four fundamental categories of discoverable information or, as *Aref* asserts, is relevant and helpful to the preparation of Mr. McGonigal defense. *See United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008).

Courts have held that the government must conduct a search if the defendant has made an explicit request for files and there is a non-trivial prospect that the examination of those files might yield material exculpatory information. *See Brooks,* 966 F.2d at 1504. Even absent an explicit request, a prosecutor is nevertheless required to search if there exists any reliable indication suggesting that files contain evidence that meets the *Brady* standard of materiality. *See* Just. Manual § 2052(B)(1); *see also Kyles v. Whitley*, 514 U.S. at 433 ("[R]egardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.") (internal quotations omitted). Moreover, the Second Circuit has adopted a lesser standard than *Brady* in cases involving classified information in the possession of the IC, requiring disclosure of information that is "relevant and helpful" to the defense. *Aref*, 533 F.3d at 80 ("[I]nformation can be helpful without being 'favorable' in the *Brady* sense."). Here, by letter dated February 1, 2023, Mr. McGonigal expressly raised the issue of a prudential search with the government, so even in the unlikely event that the government had not proactively considered its obligations, the government has been on notice of such obligations since receiving his letter.

Furthermore, certain types of cases are especially likely to present issues related to national security and/or classified information, and thus require a prosecutor to search IC files for

# BRACEWELL

March 1, 2023
Page 7

discoverable information. Cases, such as this one, involving alleged violations of the International Emergency Economic Powers Act ("IEEPA"), as well as those brought against a defendant previously associated with a United States intelligence agency implicate these concerns. *See* U.S. Dep't of Just., Just. Manual § 2052(B)(2) available at https://www.justice.gov/archives/jm/criminal-resource-manual-2052-contacts-intelligence-community-regarding-criminal-investigations; *see also United States v. Chichakli*, No. S3 09CR1002, 2014 WL 5369424, at *2 (S.D.N.Y. Oct. 16, 2014) (discussing disclosure of potentially discoverable classified materials in an alleged IEEPA conspiracy); *United States v. Libby*, 429 F. Supp. 2d 1, 4 (D.D.C. 2006) (requiring search of classified materials in possession of the White House and CIA in case against the former Assistant to the Vice President for National Security Affairs).

In the present case, there is far more than a trivial prospect, and in fact there is a high likelihood if not certainty, that the IC possesses information that is relevant and helpful to the preparation of the defense. The indictment charges violations of IEEPA based on an alleged agreement to provide services on behalf of Oleg Deripaska, a foreign national with allegedly close ties to a foreign government, who, it is reasonable to assume, may have been a target of surveillance by the United States during the relevant time frame. Moreover, the indictment makes specific references to previously-classified information that was in the possession of the IC, to which Mr. McGonigal had access by virtue of his position as Special Agent in Charge of the Counterintelligence Division of the New York Field Office. The nature of these charges strongly suggests that that the IC, including but not limited to the FBI, possesses additional classified information that is relevant and helpful to the preparation of the defense. Accordingly, the government has a duty to search for such information and disclose it to the defense pursuant to the procedures established by CIPA, and to satisfy the Court that it has done so in a manner that is sufficient to satisfy its constitutional obligations.

### III. Conclusion

Mr. McGonigal is prepared to identify categories of classified information that will be material to his defense at the defendant's *ex parte* Section 2 conference on March 8, 2023. We look forward to the opportunity to discuss the parties' respective obligations under CIPA further and to ensure that both the government's interest in protecting classified information and the defendant's constitutional rights are respected and protected during the pendency of these proceedings.

# BRACEWELL

March 1, 2023
Page 8

Respectfully submitted,

*[signature: Seth D. DuCharme]*

Mr. Seth D. DuCharme
Ms. Meagan C. Maloney