

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 7, 2023

**BY ECF**

The Honorable Jennifer H. Rearden
United States District Judge
500 Pearl Street
Southern District of New York
New York, New York 10007

      Re:    *United States v. Charles McGonigal and Sergey Shestakov*, 23 Cr. 16 (JHR)

Dear Judge Rearden:

      The Government respectfully submits this response to defendant Charles McGonigal's March 1, 2023 letter concerning the Classified Information Procedures Act ("CIPA"). (*See* Dkt. 30). Although much of McGonigal's general discourse on CIPA is unobjectionable, the Government believes several points require correction or supplementation.

      *First*, the Justice Manual—the Department of Justice publication formerly known as the U.S. Attorney's Manual or "USAM"—is a collection of internal agency policies "that provide no substantive rights to criminal defendants." *United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir. 1994); *see, e.g.*, *United States v. Williams*, 181 F. Supp. 2d 267, 299 (S.D.N.Y. 2001) (denying defendant's discovery request based on USAM). Although the Government of course followed and will follow those policies, McGonigal's letter repeatedly cites the Justice Manual as if it creates legally enforceable rules, conflating it with constitutional rules such as *Brady v. Maryland*, 373 U.S. 83 (1963). (*See* Dkt. 30 at 6-7). For example, McGonigal elides the distinction between the Government's obligation to find and disclose *Brady* material in the possession of the prosecution team, with the Justice Manual's policies and procedures involved when conducting a "prudential search" for potentially exculpatory material in the possession of intelligence agencies that had nothing to do with this prosecution. (*See* Dkt. 30 at 5-6 (purporting to describe the Government's "obligation" to search intelligence agency files for discoverable information, citing only the Justice Manual as authority)). But prudential searches are, as the name implies, searches conducted out of prudence, not legal obligation, and serve any number of Government interests apart from protecting the defendant's rights. *See, e.g.*, Justice Manual § 2052(B)(2) (discussing benefits of prudential searches such as avoiding unnecessarily compromising intelligence sources).

      *Second*, although legal rules such as *Brady* and Federal Rule of Criminal Procedure 16 do obligate the Government to disclose particular information, they do not oblige the Government to explain to defendants *how* they have satisfied that obligation. "The government's affirmative

representation that 'it is aware of its obligations under *Brady* and its progeny and will provide such information to the defense as soon as it learns of its existence' is generally 'sufficient to satisfy the [g]overnment's *Brady* obligations.'" *United States v. Hossain*, 19 Cr. 606 (SHS), 2020 WL 6874910, at *4 (S.D.N.Y. Nov. 23, 2020) (quoting *United States v. Morales*, 280 F. Supp. 2d 262, 275 (S.D.N.Y. 2003)). The Government made that representation to the defendants in a letter accompanying its initial provision of discovery in this case. Thus, to the extent McGonigal intends his detailed discussion of "the Government's Discovery Obligations" (Dkt. 30 at 5-8) to suggest that he can elicit information as to how the Government satisfies those obligations, that is incorrect. *See United States v. Gomez*, 199 F. Supp. 3d 728, 751 (S.D.N.Y. 2016), *aff'd*, 751 F. App'x 63 (2d Cir. 2018) (collecting cases).[1]

*Third*, McGonigal's letter seamlessly switches between discussing the prosecution team and the intelligence community, obscuring the distinction between the two. The "prosecution team" is a legal term that determines the Government's obligations—discovery and disclosure obligations extend only to "information known to persons who are a part of the 'prosecution team' . . . who perform investigative duties or make strategic decisions about the prosecution of the case," including "police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation." *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (citation omitted). By contrast, the "intelligence community" is a policy term that potentially extends to a great many federal agencies, such as the Department of Energy and the Drug Enforcement Agency, which are entirely uninvolved in this case, and thus entirely irrelevant to the Government's discovery obligations. McGonigal's side-by-side citation to the Justice Manual and *Kyles v. Whitley*, 514 U.S. 419 (1995) (*see* Dkt. 30 at 6), is thus misleading: *Kyles* concerned the prosecution's *Brady* obligation to disclose exculpatory information known to a member of the prosecution team—in that case, the detective who led the investigation. *See Kyles*, 514 U.S. at 433. By contrast, the Justice Manual's discussion of prudential searches in the intelligence community has little to do with the Government's legal obligations to McGonigal.

*Fourth*, McGonigal's letter repeatedly asserts that the intelligence community must possess information that is helpful to his defense, without specifying what that information must be or what agencies must possess it. (*See, e.g.*, Dkt. 30 at 6 (claiming that the intelligence community writ large "may be presumed to have been involved" in the investigation of this matter); *id.* at 7 (asserting that "in fact there is a high likelihood if not certainty, that the IC possesses information that is relevant and helpful to the defense")). At best, he has suggested that the general subject of this case—a recently retired FBI intelligence official being corrupted by a Russian oligarch—is of the type that might be of interest to intelligence agencies.[2] Even if that claim is true, however, it

---

[1]  McGonigal's letter also discusses discoverable information under 18 U.S.C. § 3500 and *Giglio v. United States*, 405 U.S. 150, 154 (1972). The Government is also aware of, and will comply with, those obligations. Such information is not, however, disclosed until shortly before trial. *See United States v. Gillier*, 11 Cr. 409 (PAE), 2022 WL 179204, at *2 (S.D.N.Y. Jan. 19, 2022) (collecting cases). This letter therefore focuses on Rule 16 and *Brady*, because the obligations under those rules are of current relevance.

[2]  McGonigal cites two cases for this proposition. (*See* Dkt. 30 at 7). One simply notes the occurrence of CIPA proceedings. *United States v. Chichakli*, 2014 WL 5369424, at *2 (S.D.N.Y. Oct. 16, 2014). But the fact that CIPA was used in an unrelated case does nothing to suggest that the intelligence community possesses information helpful to McGonigal. In the other case, the

is a far cry from suggesting that those agencies possess anything *helpful* to the defense. Thus, even if the prosecution's discovery obligations extended to the entire intelligence community—and they plainly do not—McGonigal would not have shown grounds for further inquiry on this score. *Cf. United States v. Walsh*, 774 F. App'x 706, 707 (2d Cir. 2019) ("Walsh's mere speculation that some exculpatory or impeachment material may have been withheld is not enough . . . .").

*Finally*, McGonigal suggests that he will "identify categories of classified information that will be material to his defense at the defendant's *ex parte* Section 2 conference." (Dkt. 30 at 7). But it is unclear why he needs to do this in an *ex parte* conference. As he elsewhere acknowledges, CIPA establishes procedures for the defense to identify classified information it wishes to offer, and those procedures are not *ex parte*. (Dkt. 30 at 3-4 (discussing CIPA Sections 5 and 6)). To the extent McGonigal believes he has some right to ambush the Government with an unanticipated defense, he is wrong. "Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself." *Williams v. Florida,* 399 U.S. 78, 85 (1970); *see, e.g.*, *United States v. Rubin/Chambers, Dunhill Ins. Servs.,* 828 F. Supp. 2d 698, 711 (S.D.N.Y. 2011) (directing defendants to provide notice to the Government of an advice-of-counsel defense in sufficient time to take any disputes to the magistrate judge prior to the final pretrial conference). Moreover, Section 2 contains specific protections for a defendant, so that he may openly discuss his defense before the Government without fear that his words will be used against him at trial—meaning that if a defendant wishes to discuss his defense at a Section 2 conference, he has particularly little need for an *ex parte* conference. *See* 18 U.S.C. App. 3 § 2. The Government thus trusts that McGonigal will identify any classified information he claims is relevant to the Government, as CIPA elsewhere expressly provides. *See id.* § 5 ("If a defendant reasonably expects to disclose or to cause the disclosure of classified information in any manner in connection with any trial or pretrial proceeding involving the criminal prosecution of such defendant, the defendant shall, within the time specified by the court or, where no time is specified,

---

court undertook a lengthy analysis to determine both that, under the facts of that case, the CIA and the Office of the Vice President were part of the prosecution team, and that some of the very specific documents the defendant requested from those entities were likely to be material to defense under Rule 16. *See United States v. Libby*, 429 F. Supp. 2d 1, 4-16 (D.D.C. 2006). Again, nothing about that case supports McGonigal's vague and conclusory assertions that someone in the intelligence community must have something helpful to him. Should McGonigal make a request of similar specificity to that of the defendant in *Libby*—a request that, depending on the specificity, may need to be made in a classified filing—it would be necessary to litigate whether its principles apply in the Second Circuit. *Compare Libby*, 429 F. Supp. 2d at 6, 11 (examining whether CIA and Vice President's office were "closely aligned" with the prosecution under *United States v. Brooks*, 966 F.2d 1500 (D.C. Cir. 1992)) *with United States v. Harry*, 2014 WL 6065672, at *18 (D.N.M. Oct. 10, 2014) (discussing whether the *Brooks* standard for defining the prosecution team "creates too much fuzziness"). Until then, McGonigal's speculation is irrelevant under any standard. *See Brooks*, 966 F.2d at 1504 (warning against "reliance on utter speculation" in ordering prosecutors to search for exculpatory information in the files of other agencies).

within thirty days prior to trial, *notify the attorney for the United States and the court* in writing." (emphasis added)).[3]

                                                      Respectfully submitted,

                                                     DAMIAN WILLIAMS
                                                     United States Attorney

                                    By:   /s/_____
                                          Hagan Scotten
                                          Rebecca T. Dell
                                          Derek Wikstrom
                                          Assistant United States Attorneys
                                          (212) 637-2410 / 2198 / 1085

Cc:     Defense Counsel (by ECF)
         Daniel Hartenstine and Daniella Medel, Classified Information Security Officers (by email)

---

[3] The Second Circuit has expressly approved *ex parte* CIPA conferences at which only Government counsel were present, because if "the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (internal quotation marks omitted). *Aref* also mentioned, without comment, an *ex parte* conference outside the Government's presence at which the District Court questioned the defense in an effort to determine whether material the Government proposed to delete under CIPA Section 4 would be helpful to the defense. *Id.* at 76-77. But even assuming that procedure was appropriate in *Aref*, that is not the posture of this case.