N385mcgC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                 New York, N.Y.

          v.                              23 Cr. 16 (JHR)

CHARLES McGONIGAL,
SERGY SHESTAKOV,

              Defendants.

------------------------------x
                                          March 8, 2023
                                          12:30 p.m.

Before:

               HON. JENNIFER H. REARDEN,

                                          U.S. District Judge


                       APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  HAGAN C. SCOTTEN
     DEREK WIKSTROM
     REBECCA DELL
     Assistant United States Attorneys

BRACEWELL, LLP
     Attorneys for Defendant McGonigal
BY:  SETH D. DuCHARME
     MEAGAN MALONEY


GLAVIN PLLC
     Attorneys for Defendant Shestakov
BY:  RITA M. GLAVIN
     KATHERINE E. PETRINO
```

```
 1              (Case called)
 2              THE DEPUTY CLERK:  Counsel, please state your name for
 3   the record, starting with the government.
 4              MR. SCOTTEN:  Good morning, your Honor.  Hagan Scotten
 5   and Derek Wikstrom for the government.
 6              THE COURT:  Good morning.
 7              MR. DuCHARME:  Good morning.  For Charles McGonigal
 8   Seth DuCharme and Meagan Maloney.  Good morning, your Honor.
 9              THE COURT:  Good morning.
10              MR. DuCHARME:  Good afternoon.
11              MS. GLAVIN:  Good afternoon, your Honor.  Rita Glavin
12   and Katherine Petrino, here with our client Sergy Shestakov.
13              THE COURT:  Good morning.  Please, be seated.
14              So, we were here about a month ago on February 9, and
15   I believe at that point you told me collectively that you had
16   not reached agreement on the month of trial and that more time
17   was needed for defendants to review discovery and so we are
18   back today for an update on that front.
19              MR. SCOTTEN:  Thank you, your Honor.
20              That's correct.  I believe the last time we were here
21   we told the Court we could get all of the Rule 16 discovery we
22   were aware of produced within 30 days.  And so the primary
23   announcement I have for the Court today is we did accomplish
24   that, although it did include a very small production this
25   morning.  I wanted to say that first because I think that would
```

be helpful in moving to the next stage in the case but I have to accompany it with several caveats.

The first, which shouldn't affect timing but just for clarity, is of course there are sort of two broad categories of discovery in a criminal case. We have gotten the Rule 16 out. There is also 3500 impeachment material that is not, under Circuit precedent, disclosed until shortly before trial so obviously we haven't started to disclose any of that. We don't think there will be any issues in timing of producing that once a trial date is set. I just wanted to flag that.

The second caveat is of course we are continuing to investigate, as we always do, so it won't be surprising if we acquire and produce new Rule 16 materials. I am simply representing we produced what we have now. And of course we might also make new productions in response to reviewing our files and finding something that we believe should have gone out for defense requests.

And the final one, which is unique to this case is, as I think the Court knows, Mr. McGonigal, but not Mr. Shestakov, is also indicted in the District of Columbia. We have agreed with Mr. McGonigal that he may make use of the District of Columbia production in this case to the extent any of it turns out to be material. We expect that we will, at some point, obtain a copy of the District of Columbia production which we then intend to review to see if there is anything recoverable

N385mcgC

1  to Mr. Shestakov.  So we will produce that to Mr. Shestakov if
2  and when we have it and if and when it is discoverable.  I
3  doubt very much any of that is going to be Rule 16 material
4  since it is part of a second investigation.  So I don't think
5  the Court needs to account for that in terms of timing, I just
6  wanted to flag it as potentially coming out in the future.
7         And the final thing I should say, is although we have
8  produced everything, I understand the defense has, by no means,
9  had sufficient time to review it and so that is fair and some
10 of our production we got yesterday so there is no way they
11 could have their arms around it yet.
12        I see, your Honor --
13        THE COURT:  Yes.  Mr. Scotten, what is the volume of
14 Rule 16 material that you have produced so far?
15        MR. SCOTTEN:  I would have trouble -- I don't have the
16 number of gigabytes which, in any event, would be misleading.
17 We produced some things which are large in data size but not
18 terribly significant.  For example, the defendant's phone
19 records for the past year or two take up a lot of space but I
20 don't think they're likely to be highly material to this case.
21 I think, generally speaking, on the scale of a white collar
22 case it is a medium case, it is a simple case, but it is also
23 not one of these cases that depends on highly complex financial
24 records but there are financial records.  There are large files
25 that consist of the defendants' phone content which do contain

a lot of material communications such as communication with co-defendants.  So, I would say on the scale of all cases this is a complex case, in the scale of white collar case it is somewhere in the middle.  I hope that is helpful.

THE COURT:  How much time do you need to prepare for trial in a medium case?

MR. SCOTTEN:  We charged the case and are ready to go.  That is really a question for the defense.  My understanding is they want 60 days to look at the discovery before.  I am prepared to set a calendar but I will leave that to defense.

THE COURT:  What volume is coming from the DDC case?  Do you know?

MR. SCOTTEN:  The total production to Mr. McGonigal is huge, apparently they have a very large production in their case.  I am not representing that is material in this case or that that is what we are going to give Mr. Shestakov since I doubt a lot of that is not going to be material here or is going to be redundant.  I think Mr. McGonigal's cell phone contents are electronically a huge file.  I am sure that was produced to him in both cases.

THE COURT:  Defense counsel?

MR. DuCHARME:  I can speak to some of your questions, your Honor.

To state the obvious, it is an unusual measure in this case of targeting the defendant at the same time in two

1   different districts, and to paraphrase something that
2   Mr. Scotten said, the challenge for us is large in size but not
3   significant.  So to be frank, Judge, we look forward to our
4   trial.  We are diligently trying to work through these
5   materials and I have had conversations with Mr. Scotten and
6   also the prosecutors in D.C., and I think those conversations
7   were in good faith about trying to point us to the stuff that
8   is material.
9       To give you some idea, in the D.C. case their first
10  production, which happened very recently, was in the order of
11  80,000 documents in a case which, in sum and substance, is
12  about alleged omissions or misstatements on some government
13  forms.  So it is not a very complicated case, it is a mountain
14  of data.  And in this case I think it's also fair to echo
15  Mr. Scotten's statement that, and probably in fairness to them
16  they are producing in an abundance of caution anything they
17  think might be potentially useful to us.  But we have spent
18  hours and hours and days and days going through material that
19  the relevance is not immediately apparent to me with respect to
20  the conduct.
21      THE COURT:  All right.
22      MR. DuCHARME:  So that's a long way of saying we are
23  not looking to slow this down, Judge.  We think there can be
24  some things we can do, perhaps some pretrial motions in the
25  near term, but I can't possibly represent that we have done our

1  job to go through this material without getting a little help

2  from the government to focus us and to even know when it is

3  complete.

4  THE COURT:  Yes, and I was going to go there anyway.

5  Mr. Scotten, at what point will the government be in a

6  position to point to material that you think is particularly

7  important for the defendants to review?

8  MR. SCOTTEN:  Your Honor, we are in a position to do

9  that now.  We already have a sense of what we think is most

10  important.  Sort of the usual flow of things is we get

11  everything to them and they would take an initial look at it

12  and sort of have a sense of all that is out there, and

13  Mr. DuCharme and I spoke about this briefly, but essentially I

14  assume they will come to us shortly and say, *Hey, can we sit

15  down and talk about what a trial in this case might look like*?

16  And whenever they do, we will be ready to talk with them.

17  THE COURT:  Ms. Glavin?

18  MS. GLAVIN:  Your Honor, if I may just have a moment

19  to confer with Mr. DuCharme?

20  THE COURT:  Yes.

21  (Counsel conferring)

22  MS. GLAVIN:  Your Honor, with respect to the

23  discovery, I will just start with the status from my

24  perspective as it relates to Mr. Shestakov.

25  As your knows, I got into the case -- I think we filed

notice of appearance early February. I had never met Mr. Shestakov before and so I am spending time with him, he had counsel for some period of time. And so, my client and I have a lot to go over so I just wanted to give you that context. There will be more that I will share with the Court at the conference this afternoon that I think may give you some idea about where I think we are going and what I am going to need to ask for. I just wanted to start with that.

Number two is that with respect to discovery that was produced, we got the first round, Mr. Shestakov did, on I think it was February 17th. It is a large amount. I'm not going to use the medium, small, large analogy because I think it is kind of meaningless in this context. I would say this. The first round that we got on the 17th, in terms of just pages, OK, but that's kind of deceptive, it is about 14,000 PDF pages. But what I will flag for the Court on that is that within the 14,000 pages there might be one document with one Bates stamp that has hundreds of pages attached to it. We are not even through it. I have given -- my associates are going through to digest what we have and what we don't have without reviewing it in terms of figuring out our defenses yet. In addition to just the PDF pages, which I can quantify for the Court, is the ESI, the electronically stored information, of which there is a tablet, laptops and cell phones. That does take a fair amount of time for us to review and we have not even started that

process yet.  Last night we got another large production of several thousand more pages, we haven't gone through that yet, and then, there was a very small production this morning.

In terms of I expect -- not expect, I know already the areas that I'm going to have a letter for the government and I am keeping my to-do list of what we need to ask them for, based on my conversations with Mr. Shestakov as well as consultation with Mr. DuCharme, about what I think already may be missing from the discovery that we need to ask for that would be material to the preparation of our defense and things that my client has alerted me to that I think are important.  We are going to have a fairly lengthy letter for the government and I would prefer not to do it piecemeal but to get a sense of what we have, what we don't have in these three batches that we got, and send them a letter.  I don't know if it will result in us having to do motions to compel.  I hope it will not.

So where we are is I'm not in a position right now to tell you, one, how long I think it is going to be for me to prepare for trial.  I am very conscious of the fact that this may be a case where we ask to take Rule 15 depositions for people abroad.  But in my view it may end up, in the end, being a rather simple case to try, or not, but getting there I think is going to be more of a complex process so that we understand what the defenses are, we go to trial, when we have done all of the things we have to do and that includes, at least from us,

1  potentially getting things from international sources and find
2  out if the government has done that.  Because as your Honor can
3  see from the indictment, there are foreign nationals and we can
4  talk more about this in our conference later today, that we
5  think are quite material to the case and that we want some more
6  information about that we think will have exculpatory
7  information and we have reasons for that, and that are material
8  to the preparation of the defense.
9           So that's where I am at.  If your Honor has any
10 questions?
11          THE COURT:  No, not right now.  Thank you, Ms. Glavin.
12          So, when we were here last time you all were
13 anticipating that you would need about 90 days to go through
14 the discovery and figure out where you were on discovery and
15 with respect to a possible trial date.  We are doing this
16 update after about 30 days.  I think what makes sense is -- I
17 assume that the parties are going to start having conversations
18 with the government pointing out what they think is important
19 for the defendants to review at the earliest opportunity.  I
20 think we should have letter updates in 30 days, and then we
21 will come back here in 60 days and at that conference we will
22 pick a trial date.
23          Is there anything else that anybody wants to be heard
24 on today?
25          MR. SCOTTEN:  Your Honor, do you want to try to pick

1     the 60-day date now or after our letters?
2             THE COURT:  Let's do that now and then we can deal
3     with the speedy trial clock.
4             MR. SCOTTEN:  Great.
5             THE COURT:  So what about letters on April 5th, and
6     conference on May 10?
7             MR. SCOTTEN:  That works for the government, your
8     Honor.
9             MR. DuCHARME:  That works for Mr. McGonigal.
10            THE COURT:  And for Mr. Shestakov?
11            MS. GLAVIN:  Yes, your Honor.  That works for us.
12            THE COURT:  Shall we say 11:30?
13            MR. SCOTTEN:  Does the Court have any other time
14    available?  Obviously other people can cover it but I have an
15    11:00 sentencing that I really should go to.
16            THE COURT:  Yes.  Any sense of when you will be
17    finished?
18            MR. SCOTTEN:  I would usually budget an hour for
19    sentencing, if the Court can.
20            THE COURT:  2:00 then?
21            MR. SCOTTEN:  2:00 is great for me.
22            THE COURT:  And that still works for the defendants?
23            MR. DuCHARME:  Yes, your Honor.
24            THE COURT:  Does the government wish for me to exclude
25    time under the Speedy Trial Act now through May 10?

|   |   |
|---|---|
| 1 | MR. SCOTTEN:  We do, your Honor; so that the |
| 2 | defendants can review discovery, so that the parties can |
| 3 | discuss possible contour of the trial for this case, and so |
| 4 | that defendants can prepare for trial we believe that the |
| 5 | interests of justice outweigh the interests of the defendants |
| 6 | and the public in having a trial within 60 days. |
| 7 | THE COURT:  Any objection? |
| 8 | MR. DuCHARME:  No, your Honor. |
| 9 | MS. GLAVIN:  No, your Honor. |
| 10 | THE COURT:  Hearing no objection, I hereby exclude |
| 11 | time between today and our next conference date of May 10, 2023 |
| 12 | under the Speedy Trial Act pursuant to 18 U.S.C. |
| 13 | Section 3161(h(7(A) in order to permit counsel to talk with one |
| 14 | another, review discovery, and prepare for trial.  I find the |
| 15 | exclusion to be in the best interests of justice and outweigh |
| 16 | the best interests of the public and defendants in a speedy |
| 17 | trial. |
| 18 | MR. SCOTTEN:  Nothing further from the government, |
| 19 | your Honor.  Thank you. |
| 20 | MR. DuCHARME:  Nothing for Mr. McGonigal.  Thank you, |
| 21 | your Honor. |
| 22 | MS. GLAVIN:  Nothing here, your Honor. |
| 23 | THE COURT:  Thank you, all.  We are adjourned for |
| 24 | today. |
| 25 | o0o |